UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11380-RGS

FILER, INC.

v.

STAPLES, INC. and DOES ONE THROUGH TEN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

March 1, 2011

STEARNS, D.J.

This case involves a dispute over purchase agreements between Staples, Inc., and Taiwanese manufacturer Hwa Fuh Plastics Co., Ltd. (HFP). Plaintiff Filer, Inc., the purported assignee of HFP's rights in the agreements, alleges claims of breach of contract and patent infringement against Staples. On January 14, 2011, Staples moved for summary judgment on both claims. The court heard oral argument on February 25, 2011.

BACKGROUND

Ken J. Su is the President of HFP and the named inventor of U.S. Patent No. 5,226,676 ('676 patent) (filed June 18, 1992), entitled "File Folder." The '676 patent, which issued on July 13, 1993, describes "a file folder for carrying paper and records."

*See* Zhou Decl., Ex. 4.

On or about September 1, 2006, subsidiaries of Staples entered into two manufacturing and procurement agreements with HFP (collectively, the Agreements). Def.'s Statement of Undisputed Facts ¶ 1. The Agreements set out the terms and conditions for the sale of products and manufacturing services from HFP to Staples. Each agreement states that it is governed by Massachusetts law. *See* Sullivan Decl., Ex. A (First HFP Agreement) § 22; *id*., Ex. B (Second HFP Agreement) § 23. The Agreements were signed by Su and have an effective date of September 1, 2006. After the parties entered into the Agreements, Staples began to make purchases from HFP, including file folders covered by the '676 patent. *See* Compl. ¶ 12.

In 2007, the relationship between HFP and Staples deteriorated. Staples alleges that in September of 2007, HFP unilaterally demanded an immediate price increase, in contravention of the pricing procedure specified in the Agreements. *See* Sullivan Decl. ¶ 8; First HFP Agreement § 5.1; Second HFP Agreement § 6.1. Staples further alleges that HFP refused to deliver products at the previously agreed prices and intentionally delayed and withheld shipments, disrupting Staples's supply chain and causing product shortages. *See* Sullivan Decl. ¶ 9. In response, Staples purchased substitute products from an another supplier. *See id*. ¶ 10.

On November 6, 2009, HFP purportedly assigned its rights under the

Agreements to Filer. Compl. ¶ 32; Casey Decl., Ex. B. On the same day, Su assigned certain rights under the '676 patent to Filer. Compl. ¶ 6; Casey Decl., Ex. A.

On June 11, 2010, Filer filed this Complaint in the United States District Court for the Central District of California. Filer accuses Staples of breaching the 2006 Agreement[1] and of selling products that infringe the '676 patent. Compl. ¶¶ 6-19. Staples responded on July 13, 2010, with a motion to dismiss or, in the alternative, for a transfer of venue to the District of Massachusetts. On August 12, 2010, the California court denied Staples's motion to dismiss and granted Staples's request for a change of venue.

On August 27, 2010, Staples answered Filer's Complaint and asserted counterclaims against both Filer and HFP. *See* Def.'s Answer and Countercls. Filer answered Staples's Counterclaims on October 1, 2010. *See* Pl.'s Answer to Countercls.[2] The parties disagree as to which of them is responsible for breaching the Agreements and whether Staples's substitute products infringe the '676 patent.

---

[1] As discussed previously, Staples's subsidiaries and HFP entered into two agreements effective on September 1, 2006. *See* Sullivan Decl., Exs. A & B. However, Filer's Complaint cites only one "Agreement" in discussing its breach of contract claims; it is unclear as to which of the two agreements Filer is referring. *See* Compl. ¶¶ 26, 34.

[2] HFP was served with Staples's Answer and Counterclaims by registered mail on September 16, 2010. *See* Summons Returned Executed (Dkt. 26). However, HFP has failed to answer Staples's counterclaims.

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). "[I]f a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial, that party must point to evidence affirmatively tending to prove the fact in its favor." *Fed. Deposit Ins. Corp. v. Elder Care Servs., Inc.*, 82 F.3d 524, 526 (1st Cir. 1996) (citation omitted).

Breach of Contract Claim

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted). To establish a breach, plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms. A term is material when it involves "an essential and inducing feature" of the contract.

*Buchholz v. Green Bros.*, 272 Mass. 49, 52 (1930).

The parties do not dispute that the Agreements contain provisions governing assignments. In the first agreement, the assignment clause states: "Staples may assign in whole or in part its rights and obligations hereunder to any other entity. Without the prior written consent of Staples, Manufacturer [HFP] shall not transfer or assign this Agreement or any rights or obligations thereunder." First HFP Agreement § 18. Similarly, the assignment clause in the second agreement reads: "Staples may assign in whole or in part its rights and obligations hereunder to any other entity without Company's [HFP's] consent. Without the prior written consent of Staples, Company [HFP] shall not transfer or assign this Agreement or any rights or obligations thereunder." Second HFP Agreement § 19. It is undisputed that Staples has not consented to the assignment of HFP's rights or obligations under the Agreements. Def.'s Statement of Undisputed Facts ¶ 12.

Staples contends that these clauses governing assignment (or non-assignment, with respect to HFP) are valid and enforceable. In support of this argument, Staples cites *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) (holding that a non-assignment provision in a health insurance policy was enforceable and "not contrary to public policy"), and *Home Nutritional Servs., Inc. v. Blue Cross & Blue Shield, Inc.*, 1993 WL 343674, *1-2 (D. Mass. Aug. 24, 1993)

5

(finding a contract clause stating "[y]ou cannot assign any benefits or monies . . . " to be "clear and unambiguous," and "therefore invalidat[ing] any assignments that plaintiff may have obtained without defendant's approval"). Staples argues that because the Agreements bar any assignment from HFP to Filer, Filer holds no legal rights under either of the Agreements and therefore cannot maintain a breach of contract claim.

Filer, for its part, argues that the non-assignment clauses are rendered unenforceable by Uniform Commercial Code (UCC) § 9-406(d), which is entitled, "Term restricting assignment generally ineffective." However, as Staples points out, Article 9 of the UCC applies to secured transactions (obligations the payment of which is guaranteed by the borrower's pledge of collateral), while HFP's assignment of rights to Filer involved a transfer of "certain accounts receivable" from HFP to Filer. Casey Decl., Ex. B. An assignment of an account exclusively for the purpose of collection is not governed by Article 9 of the UCC. *See* Mass. Gen. Laws Ann. ch. 106, § 9-109(d) ("This article shall not apply to: . . . an assignment of accounts, chattel paper, payment intangibles, or promissory notes which is for the purpose of collection only."); *see also In re Gull Air, Inc.*, 90 B.R. 10, 14 n.4 (Bankr. D. Mass. 1988) ("An assignment of an account which is for the purpose of collection only or a transfer of an account to an assignee in whole or partial satisfaction of a pre-existing indebtedness is not subject to Article 9 of the Uniform Commercial Code."). Because the HFP assignment to Filer

is for the purpose of collection, in satisfaction of a pre-existing indebtedness, it is not subject to Article 9 of the UCC. *See* Mass. Gen. Laws Ann. ch. 106, §§ 9-109(d)(5)-(7).[3] Moreover, as the non-assignment clauses in the Agreements are valid and enforceable, Filer holds no legal rights under either of the Agreements and cannot maintain a breach of contract claim.

Patent Infringement Claim

Filer next alleges that Staples "has engaged in the manufacture, use, distribution, and offer for sale of file folders embodying the inventions of the '676 Patent." Compl. ¶ 9. Staples argues that Filer's patent infringement claim is barred by Section 12.5 of the Second HFP Agreement, which renders invalid the assignment of the '676 patent from Su to Filer. Section 12.5 states:

> Company [HFP] shall not apply for any patent in connection with the Products, Standards, Molds, Contract Manufacturing process or production management system. To the extent any scuh [sic] patents are issued to Company [HFP], or to its employees, representatives, agents or assigns, Company [HFP] shall immediately assign all right, title and interest to such patents to Staples, shall pay all costs associated with such assignment and shall take all steps necessary to effectuate such assignment in every

---

[3] The Accounts Receivable Assignment between HFP and Filer states: "The FILER INCORPORATED agrees to relinquish all debts owed to it. In return, the HWA FUH PLASTIC CO., LTD assigns all right, title, and interest in and to this Account Receivable to the FILER INCORPORATED for collection." Casey Decl., Ex. B.

jurisdiction where such patent(s) was issued.

Second HFP Agreement § 12.5.

Filer contends that under the language of Section 12.5, HFP was required to assign to Staples patents that were issued to HFP after the execution of the Agreement, but not patents that pre-dated the Agreement. Because the '676 patent was issued to Su on July 13, 1993, prior to the signing of the Agreements on September 1, 2006, neither Su nor HFP was obligated to assign the '676 patent to Staples.

Staples responds that the plain language of Section 12.5 requires HFP to assign to Staples *all* patents under its control relating to the contracted products, regardless of the date they were issued. Staples argues that its interpretation of Section 12.5 is consistent with other sections of the Agreement, aligned with the obvious intent of the parties, and supported by case law. The court need not decide this question of contract interpretation because the text of the assignment itself provides a simpler answer.

As evidence of the patent assignment, Filer proffers a letter from Su to Filer stating:

> I, Ken Jui Su, give Filer, Inc. My [sic] permission to use my U.S. Patent #5,226,676 dated July 13, 1996. This permission is granted for production by Filer, Inc only. Filer, Inc has exclusive permission to produce this item for their customers.

Casey Decl., Ex. A. By its terms, the license is limited to the "use" of the '676 patent

"for production by Filer, Inc. only." Staples argues that because Filer does not own "all substantial rights" in the '676 patent, it lacks standing to maintain a patent infringement claim. The court agrees. In *Waterman v. Mackenzie*, 138 U.S. 252 (1891), the Supreme Court stated that an assignment by the patent owner of the whole patent, an undivided part or share of the patent right, or all patent rights in a specified part of the United States, gave an assignee the right to sue infringers. *See id.* at 255. However, "[a]ny assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement." *Id*.

The Federal Circuit elaborated upon *Waterman* in *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314 (Fed. Cir. 2009):

> Under *Waterman* and its successors, the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license. To determine whether an assignment of patent rights was made, we must 'examine whether the agreement transferred all substantial rights' to the patents and 'whether the surrounding circumstances indicated an intent to do so.'

*Id*. at 1319, quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991). *See also Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1280 (Fed. Cir. 2007) (holding that plaintiff lacked standing to sue in

9

its own name where it did not hold all substantial rights in the licensed patent); *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467 (1926) (holding that a licensee may not sue for infringement without joining the patent owner).

Here, the license provided by Su effected a narrow conveyance of rights to Filer – the right to "use" the '676 patent "for production." Casey Decl., Ex. A. Su retained substantial interests under the '676 patent, including the right to sue for infringement. In addition, as Staples notes, Filer does not have the right to assert a claim for past infringement because the license does not include an express clause assigning such right. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 (Fed. Cir. 2005) ("[A]n assignment of a patent does not ordinarily include the right to sue for past infringement."); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991) (an assignment of a right of action for past infringements "must be express, and cannot be inferred from an assignment of the patent itself."). Because Filer does not own "all substantial rights" in the '676 patent, it has no standing to sue for the alleged infringement.

## ORDER

For the foregoing reasons, Staples's motion for summary judgment as to both claims is <u>ALLOWED</u>. Staples will notify the court within ten days of the date of this opinion whether it intends to pursue its outstanding counterclaims.

SO ORDERED.

s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE